**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **A.M.H.,** ***an individual,*** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:25-cv-472** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **BEST WESTERN INTERNATIONAL, INC.,** ***et al.,*** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| | : | |
| **Defendants.** | : | |

**ORDER**

This matter comes before the Court on the Motions to Dismiss of Defendants Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Wyndham Worldwide Corporation (collectively, the "Wyndham Defendants") (ECF No. 90); Defendant Best Western International, Inc. (ECF No. 91); Defendant Choice Hotels International, Inc. (ECF No. 104); and Defendants G6 Hospitality Franchising LLC and G6 Hospitality, LLC (collectively, the G6 Defendants) (ECF No. 135).[1] For the following reasons, the Wyndham Defendants' Motion is **GRANTED in part and DENIED in part**, Best Western's Motion is **GRANTED in part and DENIED in part**, Choice Hotels' Motion is **GRANTED in part and DENIED in part**, and the G6 Defendants' Motion is **GRANTED**.

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. Plaintiff A.M.H. is a resident of Laurelville, Ohio who initiated suit in this

[1] On September 30, 2026, this Court issued an Interim Order on these motions, explaining that an expanded opinion would be filed thereafter. This Opinion constitutes the expanded opinion contemplated by the September 30 Order.

district court on April 30, 2025. (ECF No. 1, ECF No. 192 ¶ 17).[2] Proceeding anonymously, she brings this lawsuit against several hotel defendants, including:

- Defendants Choice Hotels International, Inc. and its franchisee Divya Jyoti Ltd. for the operation of a Choice-branded Quality Inn & Suites hotel in Dublin, Ohio, (¶¶ 19–21);

- The Wyndham Defendants and their franchisee Northland Hotel Inc. for the operation of a Wyndham-branded Super 8 hotel in Columbus, Ohio, (¶¶ 22–29);

- The G6 Defendants for G6's operation of a non-franchised Motel 6 in Columbus, Ohio, (¶¶ 40–41); and

- Defendant Best Western International, Inc. and its franchisee Columbus Hotel Inc. for the operation of a Best Western-branded Best Western Plus Hotel in Columbus, Ohio, (¶¶ 42–43).[3]

Plaintiff alleges that she was the victim of sex trafficking at Defendants' Columbus-area hotels from approximately 2006 through 2017. (¶¶ 1–8). She alleges she met someone as a social acquittance who was paid by sex traffickers to introduce her to them and she was then taken captive by her traffickers and sold for sex. (¶ 64). Her traffickers posted advertisements on Backpage, advertising her availability for commercial sex under the aliases Kyla and Tess and "shuffled her back and forth" around Defendants' hotels. (¶¶ 67, 70).

There, she was forced to have sex with multiple "johns" every day. (¶ 68). Her traffickers psychologically tormented her by withholding food and water and violently attacked her. (¶ 71). Because her traffickers were "very violent with her . . . loud sounds of abuse could often be heard from the room." (¶ 90). Plaintiff alleges that at all properties, there was "constant foot traffic" in and out of her room and staff witnessed "johns" coming into the main entrance and to her room.

---

[2] All paragraph citations reference ECF No. 192, the Third Amended Complaint, unless otherwise stated.

[3] Plaintiff also brought claims against Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, DJKS, Inc. and Gajanand, LLC. (¶¶ 30–39).

(¶ 89). She alleges other "red flags" including paying for extended stays on a day-by-day basis; requesting rooms away from other guests; obvious signs of illegal drug use; physical abuse in public spaces; women wearing inappropriate clothing for the weather; and living out of the hotel room. (¶ 91). At the Wyndham and Best Western properties, Plaintiff's trafficker was placed on a "Do-Not-Rent" ("DNR") list but still allowed to return despite his status on the list. (¶¶ 78–79, 87–88). At the Choice property, the staff purchased drugs from Plaintiff's trafficker, and she was forced to have sex with the manager in exchange for free and/or discounted rooms. (¶ 75).

Based on these allegations, Plaintiff filed suit against Defendants alleging one count for violation of the TVPRA under 18 U.S.C. § 1595. The Wyndham Defendants, Best Western, Choice, and the G6 Defendants have moved to dismiss Plaintiff's operative pleading under Federal Rule of Civil Procedure 12(b)(6).[4] (ECF Nos. 90, 91, 104, 135). Plaintiff has opposed (ECF Nos. 103, 114, 118, 136), and the Defendants have replied (ECF Nos. 117, 119, 124, 137). These matters are now ripe for resolution.

---

[4] The Defendants originally filed motions to dismiss the original complaint (ECF No. 1). (*See* ECF Nos. 21, 27, 34, 47). The Court later granted Plaintiff's request to file an amended complaint, which was filed on December 19, 2025. (*See* ECF Nos. 56, 75, 85). The Wyndham Defendants, Best Western, and Choice then filed new motions to dismiss the amended complaint. (ECF Nos. 90, 91, 104). The G6 Defendants filed a motion to carry forward their motion to dismiss briefing and apply it to the amended complaint. (ECF No. 92). The Court granted that motion and mooted the other defendants' original motions to dismiss. (ECF No. 133). The G6 Defendants' motion to dismiss was refiled per the Court's order. (ECF No. 135). In April 2026, the Court granted a joint request to file an amended complaint removing and adding certain defendants and stated that the Court will consider the pending motions to dismiss (ECF Nos. 90, 91, 104, 135) as seeking to dismiss the second amended complaint. (ECF No. 151). The Second Amended Complaint was filed on April 22, 2026. (ECF No. 153). On July 2, 2026, the Court ordered Plaintiff to file a clean copy of her Second Amended Complaint, removing a party she had voluntarily dismissed before filing it. (ECF No. 186). Plaintiff thus filed the Third Amended Complaint on July 16, 2026. (ECF No. 192). Thereafter, the Court granted Defendants' requests to apply their pending motions to dismiss to the Third Amended Complaint. (*See* ECF Nos. 194, 196, 198, 205).

## II. STANDARD OF REVIEW

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the complaint's cause of action and is "not a challenge to [its] factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [plaintiff's] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted). This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

## III. LAW & ANALYSIS

### A. Improper Party

As a preliminary matter, Best Western argues that Best Western International ("BWI") is an improper party to this action. (ECF No. 91 at 10–11). Relying on its Membership Agreement with the franchisees who operate the hotel and on the Franklin County Treasurer and Recorder's websites, Best Western contends it is "unjust" to "drag" it "through this litigation when the Membership Agreement uncontrovertibly imparts all liability to the individual hotel owners." [5] (ECF No. 91 at 11–12). Plaintiff responds that this Court already rejected Best Western's argument in *A.W.* (ECF No. 114 at 10–12). Plaintiff is correct. In *A.W.*, the Court considered this exact argument and declined to grant Best Western's motion to dismiss on this basis. *A.W. v. Red Roof Inns, Inc.*, 2022 WL 17741050, at *4 (S.D. Ohio Dec. 16, 2022). The Court reasoned that "[t]he purpose of a motion to dismiss is to test the plaintiff's cause of action as stated in the complaint, not to challenge the plaintiff's factual allegations." *A.W.*, 2022 WL 17741050, at *4.

Plaintiff here, like the plaintiff in *A.W.*, alleges that Best Western promulgates policies, procedures, and standards governing branding, operations, and employee training to which franchisees must adhere as part of their franchise agreements. (¶¶ 174–184). Further, Plaintiff alleges that Best Western failed to implement training and policies that would help employees identify and combat instances of sex trafficking in their hotels. (¶ 183). Finally, Plaintiff argues that franchisee locations pay about 10% of their gross revenue back to Defendants for the privilege

---

[5] In *A.W.*, the Court concluded that BWI's Membership Agreement was properly introduced at this stage of the litigation and the publicly available documents were not. *A.W. v. Red Roof Inns*, *Inc.*, 2022 WL 17741050, at *4 (S.D. Ohio Dec. 16, 2022). The Court sees no reason to depart from that ruling here, where Plaintiff explicitly asks the Court to hold the same (ECF No. 114 at 11) and Best Western does not address *A.W.*'s holding. In any event, it is of no consequence—even considering the documents, Best Western's improper party argument fails.

of using the brands name and standards. (¶184). As discussed more fully below, these allegations are sufficient to state a cause of action under the TVPRA, and whether Best Western owns the physical property or purports to disclaim liability through its franchise agreement are not dispositive. It would be improper for this Court to allow a challenge to the Plaintiff's factual allegations at this stage.

**B. Statute of Limitations**

The Sixth Circuit has recognized that Rule 12(b)(6) is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," unless the allegations affirmatively show a claim is time-barred. *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). This is because the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff "generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo,* 676 F.3d at 547 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). But where "the allegations in the complaint affirmatively show that the claim is time-barred," dismissal under Rule 12(b)(6) is appropriate. *Id.* (citing *Jones*, 549 U.S. at 215); *see Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 743 (S.D. Ohio 2020) ("A motion to dismiss based on the statute of limitations ... can be granted only where the defense appears valid from the face of the Complaint alone."). If "it is apparent from the face of the complaint" that the claim is time-barred, "[t]he obligation to plead facts in avoidance of the statute of limitations defense is triggered." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (internal quotations omitted).

*1. Claims Arising Prior to December 23, 2008*

All Defendants argue Plaintiff's claim is time-barred prior to December 23, 2008, when the beneficiary theory was added by amendment to the TVPRA. (*See* ECF Nos. 90 at 4; 91 at 12–13; ECF No. 104 at 3–4; ECF No. 135 at 3, n.2). This Court has already held that the beneficiary

prong of the TVPRA could not be applied retroactively to conduct before it was enacted. *See S.R. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3226126, at *2 (S.D. Ohio June 28, 2024). Plaintiff concedes this point and expressly states that she is not seeking to hold Defendants liable for conduct arising prior to December 23, 2008. (*See* ECF No. 103 at 12 ("Plaintiff, however, has not brought claims for trafficking that occurred before reauthorization of the TVPRA[,]"); ECF No. 114 at 12 ("A.M.H. has not alleged violation of the TVPRA from before 2008 when that statute took effect."); ECF No. 118 at 9 ("Plaintiff does not bring claims that predate the TVPRA."); ECF No. 136 at 7 ("Plaintiff does not disagree with the G6 Defendants that Plaintiff's claim is time-barred prior to December 23, 2008[.]")). Accordingly, Defendants' motions are **GRANTED** in so far as they seek to dismiss Plaintiff's beneficiary theory claims for conduct prior to December 23, 2008.

*2. Choice and Wyndham's Statute of Limitations Argument*

The TVPRA requires that a claim be "commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). Choice and Wyndham thus argue that any conduct arising prior to April 30, 2015—ten years prior to Plaintiff's April 30, 2025 filing date—are time-barred. (ECF No. 104 at 5; ECF No. 90 at 5, n.2). Plaintiff counters that this Court has ruled that TVPRA claims are subject to the continuing violations doctrine. (ECF No. 118 at 9; ECF No. 103 at 12–13). This Court has indeed so held. *See S.R.*, 2024 WL 3226126, at *2 (holding that plaintiff's TVPRA claims like the ones at issue here "are precisely the sort to which the 'continuing violation' doctrine should apply"); *see also J.N.K. v. Red Roof Inns*, 2025 WL 772150, at *9 (S.D. Ohio Mar. 11, 2025) (declining to dismiss TVPRA claims based on statute of limitations because of the continuing violations doctrine); *T.B. v. Red Roof Inns, Inc.*, 2025 WL 755165, at *8 (S.D. Ohio Mar. 10, 2025) (same); *D.E.G. v. Red Roof Inns*, 2025 WL 712755, at *3 (S.D. Ohio Mar. 5,

2025) (same); *C.M.G. v. Red Roof Inns*, 2025 WL 676258, at *9 (S.D. Ohio Mar. 3, 2025) (same); *A.M.G. v. Red Roof Inns, Inc.*, No. 2:23-CV-04195, 2025 WL 588645, at *9 (S.D. Ohio Feb. 24, 2025) (same).

The out-of-circuit authority relied on by Choice and Wyndham do not offer persuasive justification to revisit this Court's prior holdings and it declines to do so. Because Plaintiff invokes the continuing violation doctrine and her allegations do not affirmatively show that her claims are time-barred, dismissal on statute of limitations ground is inappropriate. *Cataldo*, 676 F.3d at 547.

*3. G6 Defendants' Statute of Limitations Argument*

The G6 Defendants' statute of limitations argument presents a closer call. They argue, based on public records, that because they sold the Motel 6 property at issue on August 20, 2013, Plaintiff's suit against them is time-barred. (ECF No. 135 at 2–3). As a threshold matter, Plaintiff does not dispute the propriety of introducing the public records at this stage of the litigation. (ECF No. 136). Because Plaintiff did not object to their introduction, and because matters of public record can be considered at the motion to dismiss stage, the Court will consider the exhibits attached to the G6 Defendants' motion. *See Atchison v. Hubbell Indus. Controls, Inc.*, 777 F. Supp. 3d 834, 850 (M.D. Tenn. 2025) ("Where a party fails to respond to an argument in a motion to dismiss, the court assumes he concedes this point and abandons the claim."); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (stating courts can consider "matters of public record" on a Rule 12 motion).

According to Franklin County property records, the G6 Defendants sold the property located at 1289 E. Dublin Granville Road to Sunstar Columbus, Inc. on August 20, 2013. (ECF No. 135-1). According to court records and news articles, the property was then operated as a Red Carpet Inn, not a Motel 6. (ECF No. 135 at 3 n.1; 135-2). Plaintiff does not dispute this. (ECF

No. 137). The G6 Defendants thus contend that Plaintiff had until August 20, 2023 to file suit under TVPRA's ten-year statute of limitations. (ECF No. 135 at 3). The Court agrees. Because Plaintiff did not bring her suit until April 30, 2025, her claim against the G6 Defendants is time-barred, if an exception to the statute of limitations does not apply.

Setting aside exceptions, Plaintiff's only argument to the contrary is that she remained under control of her traffickers for four more years and she should not have a "shortened statute of limitations based on the business decisions of the hotel." (ECF No. 136 at 5). But her statute of limitations period is not shortened—it remains ten years under the TVPRA. She had ten years to sue the G6 Defendants after her cause of action arose (which could not have been after August 20, 2013) and ten years to sue each other hotel after her cause of action against them arose.

The only question that remains, then, is whether an exception to the ten-year statute of limitations exists to save Plaintiff's claim. Plaintiff first contends equitable tolling applies. (ECF No. 135 at 5–9). But unlike her claims against Wyndham, Best Western, and Choice, equitable tolling does not save her claims against the G6 Defendants. In *S.R.*, this Court held:

> Importantly, however, the continuing violation doctrine does not salvage claims that are entirely outside the statute of limitations period. Instead, it permits a plaintiff to assert a claim for continuing wrongful conduct. Even if the beginning of the wrongful conduct was outside of the applicable statute of limitations, a claim for that conduct can be brought so long as some part of the wrongful conduct falls within the statute of limitations. Because any wrongful conduct committed by the Defendants against S.R. ended no later than May 22, 2013, that conduct would fall outside of the applicable statute of limitations period and the continuing violation doctrine would not apply.

2026 WL 2294493, at *8. Here, any claim Plaintiff has against the G6 Defendants would have ended on August 20, 2013 at the latest and thus falls entirely outside the statute of limitations.

Plaintiff's argument that she was experiencing "wrongful conduct" from other defendants does not save her claim against the G6 Defendants.

Plaintiff next argues that the discovery rule saves her claim against the G6 Defendants. (ECF No. 136 at 10). Under this rule, "the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763–64 (6th Cir. 2017). Plaintiff points to no case holding that the discovery rule applies to the TVPRA. Most cases analyzing the issue hold that it does not. *See, e.g.*, J.*M. v. Red Roof Franchising, LLC*, 2025 WL 2410941, at *6 (E.D. Cal. Aug. 20, 2025) (Plaintiff "cites no case in which any federal court has applied a discovery rule to a civil claim under the TVPRA, and this court is aware of none."); *S.K. v. G6 Hospitality, LLC, et al.*, 2026 WL 2532397, at *4 (E.D. Tex. July 24, 2026) (concluding "the discovery rule does not help because the TVPRA's text does not appear to incorporate the discovery rule."). Indeed, this Court already stated in *S.R.* that "it is doubtful that the discovery rule applies to the TVPRA." *S.R.*, 2026 WL 2294493, at *9; *see also Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763 (6th Cir. 2017) (applying the discovery rule when the statute was "silent on the matter").

Plaintiff argues that the discovery rule applies to toll statute of limitations where a plaintiff lacked the capacity to recognize the nature of her injuries due to trauma or other extraordinary circumstances. (ECF No. 136 at 10). She relies on *Snyder-Hill*, where the Sixth Circuit held that the discovery rule applied to Title IX claims. *See Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701 (6th Cir. 2022). But *Snyder-Hill* is readily distinguishable because Title IX "does not contain its own statute of limitations." *Id.* at 698. The lack of a statutory provision was central to the court's reasoning in determining the discovery rule applied. Indeed, in explaining the discovery rule, the court stated: "In other words, *absent a statutory directive to the contrary*, the 'discovery

rule' applies, and the clock starts only when a plaintiff knows or should have known certain facts related to their injury." *Id.* (emphasis added).

Here, the TVPRA does contain a statutory directive to the contrary. It states that an action must be "commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). That language unambiguously sets the date a cause of action arose as the event that starts the limitations period. In *Rotkiske v. Klemm*, the Supreme Court held that the discovery rule was inapplicable to the FDCPA, where the statutory language unambiguously set the "date on which the violation occurs" as the event that starts the limitations period. 589 U.S. 8, 13 (2019). The court reasoned that Congress has enacted language in other statutes setting limitations periods to run from the date of discovery of a violation, Congress is presumed to "say[] in a statue what it means and mean[] in a statute what it says," and the Court cannot second-guess Congress' balance of interests. (*Id.* at 14–15) (internal citations omitted).

In *Bay Area Laundry*, the Supreme Court held that a statute of limitations provision using the phrase "the date on which the cause of action arose" "incorporates the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201 (1997). Following these Supreme Court precedents, the Court concludes that the discovery rule does not apply to the TVPRA. *See also C.C. v. Rashid*, 2025 WL 1785273, at *6 (D. Nev. June 26, 2025) (citing *Bay Area Laundry* and concluding the text of the TVPRA does not incorporate the discovery rule); *K.L. v. Lodge*, 2026 WL 2185409, at *3 (E.D. Cal. July 29, 2026) (noting "fellow district courts" have "soundly rejected application of the discovery rule in similar TVPRA cases").

Plaintiff's last argument is that the doctrine of equitable tolling applies. (ECF No. 136 at 13). A litigant "is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (citation and internal quotation marks omitted). The Sixth Circuit has instructed that equitable tolling "must necessarily be determined on a case-by-case basis," and identified "five factors to consider when determining the appropriateness" of equitable tolling: (1) "lack of notice of the filing requirement"; (2) "lack of constructive knowledge of the filing requirement"; (3) "diligence in pursuing one's rights"; (4) "absence of prejudice to the defendant"; and (5) "the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (evaluating Title VII claims).

Defendant argues first that equitable tolling does not apply to the TVPRA, and second, even if it does, it does not apply here because Plaintiff cannot show diligence. (ECF No. 135 at 4). The Court need not reach the issue of whether equitable tolling applies to the TVPRA because even if it does, Plaintiff has not sufficiently pleaded it here. Plaintiff argues that even after escaping her traffickers in 2017, she suffered ongoing trauma that impaired her ability to pursue legal remedy. (ECF No. 136 at 14). But the paragraphs of the Third Amended Complaint she cites allege only that "as a result of being a victim of trafficking" from 2006 to 2017, she faced "extraordinary circumstances" and that "Plaintiff could not have pursued her claims while under the active control of her traffickers despite the exercise of ordinary diligence." (¶¶ 65, 187–188).[6]

[6] As noted above, the Court granted the G6 Defendants' motion to carry the motion to dismiss briefing forward, so all paragraph references in their motion and Plaintiff's response are to the

Even assuming her allegations are enough to satisfy the extraordinary circumstance prong, there are no allegations sufficient to conclude that she pursued her rights diligently here. She only alleges that she could not have pursued her rights until her trafficking ended in 2017, but she makes no allegations whatsoever of diligently pursuing her claims after 2017. At the time of her escape from trafficker control in 2017, she still had until August 20, 2023 to bring a claim against the G6 Defendants. Instead of filing within those six years, she took an additional two years.

Given the absence of allegations that she pursued her rights diligently and the years-long delay, Plaintiff cannot invoke the doctrine of equitable tolling. *See, e.g.*, *C.C.*, 2025 WL 1785273, at *4 (holding plaintiff not entitled to equitable tolling of TVPRA claim when plaintiff did "not otherwise explain how she diligently pursued her claims after each cause of action arose against the Defendants"); *Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, 130 F.4th 593, 607 (6th Cir. 2025) (upholding district court's dismissal of complaint as time-barred and concluding equitable tolling did not apply when plaintiff's equitable-tolling arguments were not tethered to her complaint); *Wynn v. City of Covington, Kentucky*, 2025 WL 2093032, at *3 (6th Cir. July 25, 2025) (upholding grant of motion to dismiss on statute of limitations ground in § 1983 case despite plaintiff's argument that equitable tolling applied because he did not know the officer's identities when plaintiff "offer[ed] nothing to reflect an attempt, diligent or otherwise," to identify the officers); *Bishop*, 520 F.3d at 519 (upholding district court's grant of motion to dismiss on statute of limitation grounds when complaint did not allege date plaintiff had actual knowledge of the violation, which was the relevant date for statute of limitations purposes under the statute at issue). The G6 Defendants' Motion to Dismiss is **GRANTED**.

---

original complaint. Plaintiff's opposition cites paragraphs 54 and 175–176 in the original complaint which correspond to paragraphs 65 and 187–188 in the Third Amended Complaint.

### C. Direct Civil Liability

The TVPRA sets forth certain criminal penalties for those who benefit from human trafficking. *See* 18 U.S.C. § 1591(a).[7] The TVPRA also creates a civil cause of action:

> An individual who is a victim of a violation of [§ 1591] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person know or should have known has engaged in an act in violation of [§ 1591]) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). As the statutory text makes clear, Section 1595 creates two kinds of civil liability: perpetrator liability and beneficiary (or participant) liability. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552–53 (7th Cir. 2023). Plaintiff here brings a claim for beneficiary liability against the Defendants. *See* (ECF No. 192 at ¶ 194) ("Defendants had a statutory obligation not to benefit financially or receive anything of value from a venture they knew, or should have known, engaged in violating the TVPRA.")).[8]

---

[7] Section 1591 provides, in relevant part:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C.A. § 1591.

[8] Plaintiff's argument in response to Choice's motion to dismiss that she sufficiently alleged perpetrator liability is not well taken. As Choice points out, Plaintiff explicitly disclaimed a perpetrator liability claim in response to Choice's first motion to dismiss: "Plaintiff has not alleged

To state a claim for beneficiary liability, Plaintiff must plausibly allege that Defendants (1) "knowingly benefit[ted], financially or by receiving anything of value"; (2) from "participation in a venture"; (3) which they "knew or should have known has engaged in an act in violation" of Section 1591. 18 U.S.C. § 1595(a); *see also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *G.G.*, 76 F.4th at 553 (7th Cir. 2023). Defendants challenge the sufficiency of Plaintiff's allegations as to the second and third elements. Each is addressed in turn.

*1. Participation in a Venture*

The TVPRA does not define "participation in a venture." As this Court recognized in *M.A.*, the case law provides a spectrum of examples that qualify as "participation in a venture" as understood in ordinary terms. *M.A.*, 425 F. Supp. 3d at 970–71. One way to establish participation is through evidence of a direct association between the trafficking venture and the defendant. *Id.* at 970. A plaintiff, for example, can point to "acts or omissions" that "facilitated the sex trafficking venture," like a hotel renting rooms to people they knew or should have known were engaged in sex trafficking. *See id.* at 971 (allegations that hotels "rented rooms" sufficient to show

---

a claim for what some courts call 'perpetrator liability.'" (ECF No. 42 at 10). Plaintiff represented to the Court in seeking leave to file her Amended Complaint that "[t]he proposed amendment merely adds the franchisees and no other changes are made to the claims for relief or the theory under which the claims are brought." (ECF No. 56 at 3). Indeed, the cause of action is the same under the original complaint, the Amended Complaint, and the operative Third Amended Complaint. (*Compare* ECF No. 1 ¶¶ 180–184, *with* ECF No. 85 ¶¶ 209–213 and ECF No. 192 ¶¶ 192–196). Plaintiff cannot change her mind but not her pleadings. And her complaint alleges beneficiary liability. (*See* 192 at ¶ 194). It is too late to change that now. *See Pierre Invs., Inc. v. Fifth Third Bancorp,* 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022) ("Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them."); *Norton Outdoor Advertising, Inc. v. Village of St. Bernard*, 168 F.4th 897, 904 (6th Cir. 2026) ("Waiver is an affirmative and intentional relinquishment or abandonment of a known right.) (internal citations omitted); *Walker v. United States*, 134 F.4th 437, 442 (6th Cir. 2025) ("[P]arty statements directing a court away from an issue the party clearly understands are hallmarks of waiver."). Choice's Motion to Dismiss is therefore **GRANTED** to the extent it seeks to dismiss any purported perpetrator liability claim.

"participation in a venture" under § 1595). "In the absence of a direct association," a plaintiff can also show "a continuous business relationship" between the trafficking venture and the hotel "such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)). As this Court has held many times, "participation in a venture" does not require actual knowledge of the sex trafficking crimes, nor does it require an "overt act." *See, e.g.*, *C.M.G*, 2025 WL 676258, at *13; *S.R.*, 2024 WL 3226126, at *4; *M.A.*, 425 F. Supp. 3d at 964.

Wyndham, Best Western, and Choice all argue that Plaintiff's allegations as to them are not sufficient to show they participated in a venture in violation of § 1595(a). Most of their arguments have been explicitly rejected by this Court. First, Choice contends that the commercial franchise relationship does not suffice because the relevant venture must be a "sex trafficking venture." (ECF No. 104 at 24–25). This Court has already rejected that argument:

> [A] defendant meets the definition of participation in a venture where it financially benefits from renting rooms to individuals that they knew or should have known were engaged in trafficking.
> . . .
>
> Plaintiff sufficiently alleges that Defendant was engaged in a commercial business venture with [her] traffickers because she states that Defendant receives a portion of the franchisee hotel's profits from renting rooms to traffickers and were generally aware of trafficking in their hotels through a combination of online reviews, related ongoing litigation, and trafficking-related criminal activity. *Defendant participated in this commercial venture with traffickers who carried out their own sex trafficking ventures from Defendant's hotel.*

*A.W.*, 2022 WL 17741050, at *9 (emphasis added) (internal quotations omitted). *See also N.A.O. v. Red Roof Inns, Inc., et al.*, 2026 WL 2836383, at *9 (S.D. Ohio Sept. 22, 2026) (distinguishing *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016) which arose in the criminal context of

§ 1591(a)(2)). Under this Court's precedent, then, the relevant venture need not be a sex trafficking venture—a "continuous business relationship" between the trafficking venture and the hotel suffices.

The question then becomes whether Plaintiff has sufficiently alleged a continuous business relationship "such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970. Wyndham, Choice, and Best Western argue Plaintiff has not done so, contending that the allegations are insufficient and too conclusory as to them. (*See* ECF Nos. 90 at 6–7; ECF No. 91 at 13–5; ECF No. 104 at 24–26). Defendants emphasize their status as franchisors and contend the allegations describe nothing more than a typical franchisor-franchisee relationship, which is too far removed to support liability. (*See* ECF Nos. 90 at 5–6; ECF No. 91 at 13; ECF No. 104 at 25–26). This argument, too, has already been rejected by this Court.

In *A.M.*, this Court expressly "addresse[d] whether a franchisor-franchisee relationship between Defendant and the hotel operators is too attenuated to support Plaintiff's claim." *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 799 (S.D. Ohio 2024). The Court concluded it was not too attenuated to do so and found Plaintiff's allegations "that Defendant profited, failed to implement policies, and maintained expansive control over the hotel operation standards meet § 1595's definition of 'participation in a venture.'" *A.M.*, 728 F. Supp. 3d at 799. So too here. (¶¶ 20, 28, 42, 59–61, 116–142, 174–184); *See also B.D.G. v. Choice Hotels Int'l, Inc.*, 2023 WL 5935646, at *5 (S.D. Ohio Sept. 12, 2023) (same); *R.K.*, 2024 WL 1332152, at *5 (same).

Defendants' argument that Plaintiff's allegations at most show failure to act, which is not participation, misses the mark. (*See* ECF No. 90 at 8; ECF No. 91 at 15; ECF No. 104 at 27). As this Court explained in *A.M.*:

> Defendant's argument that it at most observed trafficking, as opposed to participating in it, is similarly unpersuasive. It complains that Plaintiff is seeking to impose on it an affirmative duty to seek out and prevent trafficking. As Plaintiff points out, though, she does not allege mere observation coupled with a failure to intervene. This is not an attempt at bystander liability. Instead, she alleges that the Defendant violated the duty established by the TVPRA: to refrain from 'knowingly benefiting from 'participation in a venture' that Defendant knew or should have known violated § 1591.

*A.M.*, 728 F. Supp. 3d at 799.

In sum, based on this Court's prior precedent, Plaintiff has sufficiently pleaded that Defendants benefitted from participation in a venture. She alleges that Defendants were engaged in a commercial business venture with her traffickers because she states that Defendants received a portion of the franchisee hotel's profits from renting rooms to traffickers and that Defendants substantially oversaw operations and promulgated policies for their franchisee hotels. (¶¶ 20, 28, 42, 59–61, 116–142, 174–184). The parties' differing allegations about Defendants' operational role in the local hotels involves factual disputes that cannot be resolved by the Court at this stage of litigation. Plaintiff's allegations are sufficient to survive the motions to dismiss.

*2. Knew or Should Have Known*

The last element under Section 1595 requires Plaintiff to allege plausibly that Defendants "knew or should have known" that the venture from which they benefitted "has engaged in an act in violation of" the TVPRA. *See* 18 U.S.C. § 1595(a). To satisfy this element, Plaintiff need only allege that "Defendants 'should have known' about the nature of the venture under a negligence standard." *M.A.*, 425 F. Supp. 3d at 966. No "evidence of actual knowledge or conspiracy between Defendants and the trafficker[s]" is required to satisfy this element. *See id.* Nor is Plaintiff required to allege "that the defendant knew or should have known of the *specific* victim who has

brought the civil action." *See G.G.*, 76 F.4th at 558 (emphasis added). Allegations "that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence," and evidence "specific to [Plaintiff's] own sex trafficking, including a number of signs she alleges should have alerted staff to her situation," can satisfy the negligence standard under Section 1595(a). *M.A.*, 425 F. Supp. 3d at 968.

Wyndham, Best Western, and Choice argue that Plaintiff's allegations are not sufficient to show the requisite knowledge. (ECF No. 90 at 9–13; ECF No. 91 at 16–18; ECF No. 104 at 28–31). Relevant for the knowledge requirement, Plaintiff alleges that there were a number of red flags apparent to hotel staff including: loud sounds of abuse; constant foot traffic; paying for extended stays on a day-by-day basis; requesting rooms away from other guests; obvious signs of illegal drug use; physical abuse in public spaces; women wearing inappropriate clothing for the weather; and living out of the hotel room. (¶¶ 89–91). She alleges that she "encountered the same staff on multiple occasions" who would have "seen the signs of Plaintiff's deterioration" including "bruising and physical and verbal abuse occurring in public areas of Defendants' properties." (¶ 73).

She specifically alleges that at the Wyndham and Best Western properties, her trafficker was placed on the DNR list but was seen in public places on the property while he was on the list. (¶¶ 78–79, 87–88). Plaintiff also alleges that Defendants have access to the DNR list of individual hotels. (¶ 97). And at the Choice hotel, Plaintiff alleges that the staff not only knew about her trafficker but also purchased drugs from him and, even more relevant, that she was forced to have sex with the manager in exchange for free and/or discounted rooms. (¶ 75).

Plaintiff further alleges that Defendant franchisors were on notice about the prevalence of sex trafficking at their hotels yet continued to rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence. (¶¶ 59–60; 97–105; 114–115). These allegations, taken together, are sufficient to satisfy the knowledge element. *See, e.g.*, *A.W.*, 2022 WL 17741050, at *7 ("As this Court has previously stated, general knowledge and failure to act constitute constructive knowledge and meet the plausibility standard required to state a claim for negligence under the TVPRA's beneficiary theory."). Defendants' out-of-circuit authority does not persuade this Court otherwise.

Best Western and Choice contend that because there are no allegations that they were aware of *Plaintiff's* sex trafficking, the knowledge element is not satisfied. (ECF No. 91 at 16; ECF No. 104 at 28). Not so. Again, this Court has explicitly rejected that argument: "To require Plaintiff to demonstrate that Defendant actually knew about [plaintiff's] specific trafficking . . .would defeat the purpose of the constructive knowledge prong of § 1595." *A.W.*, 2022 WL 17741050, at *9.

Best Western and Choice's argument that, at most, Plaintiff's allegations are more akin to prostitution or commercial sex fares no better. (ECF No. 91 at 17; ECF No. 104 at 30). Plaintiff alleged, for example, that "loud sounds of abuse could often be heard from the room" and she suffered "physical abuse in public spaces." (¶¶ 90–91). Those red flags are not consistent with prostitution and are instead indicative of fraud, force, or coercion. *See B.T. v. G6 Hosp., LLC*, 2026 WL 2936473, at *5 (S.D. Ohio Sept. 30, 2026).

Plaintiff has sufficiently pleaded facts to allow her claim to survive at this stage. Any factual issues surrounding what Defendants actually knew or should have known must be addressed at a later stage of litigation.

### D. Indirect Liability

Plaintiff also alleges that Defendants are indirectly liable for violations of § 1595. (¶ 20, 28, 42). Wyndham, Best Western, and Choice all argue that Plaintiff's allegations of secondary liability are insufficient, addressing both agency law and the joint-employer doctrine. (ECF No. 90 at 13–16; ECF No. 91 at 18–19; ECF No. 104 at 6–13). A plaintiff "can also satisfy the elements of § 1595's beneficiary theory by imputing to the defendant the acts, omissions, and state of mind of an agent of the defendant through indirect or vicarious liability." *M.S. v. G6 Hosp., LLC*, 2025 WL 2781214, at *10 (S.D. Ohio Sept. 30, 2025) (internal quotations omitted); *see also J.N.K. v. Red Roof Inns*, No. 2:24-CV-00389, 2025 WL 772150, at *18 (S.D. Ohio Mar. 11, 2025) ("[T]his Court holds that the TVPRA allows for vicarious liability.").

This Court applies federal common law in analyzing indirect liability under the TVPRA. *See, e.g.*, *T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 799–800 (S.D. Ohio 2024) (noting this Court previously analyzed vicarious liability issues under both federal and Ohio common law but choosing to proceed under a federal common law analysis consistent with "the Sixth Circuit's approach to applying federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments"); *D.E.G*, 2025 WL 712755, at *11 (same).

#### *1. Agency*

As this Court has recognized, the Sixth Circuit looks to the Restatement of Agency when applying "federal common law principles of agency." *See D.E.G*, 2025 WL 712755, at *11 (quoting *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016)). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and

subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (Third) of Agency* § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." *Id.* at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting *Restatement (Second) of Agency* § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them." (internal quotation marks and citations omitted)); *see also* Restatement (Third) of Agency § 1.01 cmt. g ("Performing a duty created by contract may well benefit the other party but the performance is that of an agent only if the elements of agency are present."). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Bricker*, 804 F. Supp. 2d at 623 (quoting *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

Although the existence and extent of the agency relationship is a question of fact, a plaintiff must sufficiently allege that an agency relationship existed for her complaint to survive a Rule 12(b)(6) motion to dismiss. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 661

(6th Cir. 2005) ("Given that the existence of an agency relationship is a question of fact, rather than one of law, ... the court should have denied [the defendant's] motion if any conflicting evidence of an agency relationship between plaintiffs and [the defendant] was presented."); *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 447 (D.C. Cir. 1990) ("It is ... clear that the plaintiff bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship.").

Wyndham, Best Western, and Choice argue that the allegations in the complaint are insufficient to support an agency relationship between them and their respective franchisee hotel. (ECF No. 90 at 13–14; ECF No. 91 at 18–19; ECF No. 104 at 6–10). But Plaintiff sufficiently alleges an agency relationship here.[9] She expressly alleges an agency relationship between each moving Defendant-franchisor and its branded franchisee-hotel. (¶¶ 20 (Choice), 28 (Wyndham), 42 (Best Western)). She further details the degree of control she alleges the Defendants exercise over the day-to-day operation of the hotels, through a combination of requirements such as: using central room reservation systems and payment systems operated and managed by defendants; allowing for periodic inspection of their brand locations; keeping audit reports; using approved internet vendors; following Defendants' regulated room rates and insurance coverage requirements; using Defendants' training and orientation materials; and adhering to other highly specific and detailed brand standards. (¶¶ 49, 51, 55, 116–142, 174–179). These allegations are similar to others that this Court has found sufficient to allege an agency relationship. *See, e.g.*, *B.D.G.*, 2023 WL 5935646, at *8; *A.M.*, 728 F. Supp. 3d at 803–804; *C.C. v. Wyndham Hotels &*

[9] Plaintiff states she is not bringing a claim for apparent agency. (ECF No. 118 at 9, n.1). Thus, the Court only addresses actual agency.

*Resorts, Inc.*, 2024 WL 1347303, at *10 (S.D. Ohio Mar. 29). The pleadings are sufficient here, too. [10]

Defendant Choice's arguments relating to its franchise agreement are not to the contrary. Choice contends that its franchise agreement directly refutes Plaintiff's claim and "explicitly states that the owner / operator of the Hotel is an 'independent contractor' and that nothing in the Franchise Agreements 'makes or is intended to make, either party an agent . . . of the other.'" (ECF No. 104 at 7). But that is not dispositive. *See Doe v. Red Roof Inns*, 2025 WL 724613, at *12 (S.D. Ohio Mar. 6, 2025) ("The parties' contractual disclaimer of a particular legal relationship is . . .not dispositive."); Restatement (Third) of Agency § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between parties ... is not controlling."). Whether Defendant franchisors exert enough control over the day-to-day operations of their franchisee hotels is a question of fact not well suited for resolution at the motion to dismiss stage. Plaintiff has pleaded sufficient control which is enough to survive here.

2. *Joint Employer*

This Court has previously held that a plaintiff can allege indirect liability through a joint employer theory in TVPA cases. *See, e.g.*, *A.R. v. Wyndham Hotels & Resorts, Inc.*, 2022 WL 17741054, at *11 (S.D. Ohio Dec. 16, 2022) (allowing plaintiff's claim for joint employer liability to proceed under TVPRA). As this Court has previously explained, "[m]ost courts have recognized that the employer control theory and the agency theory are essentially the same." *A.R.,* 2022 WL

---

[10] Defendants do not separately argue that the franchisee's did not commit a wrong, so the Court does not separately address the franchisee hotel's liability under 18 U.S.C. § 1595(a), except to say the analysis would proceed similarly under the three-part framework addressed above, and, as with Defendants' direct liability, the allegations are sufficient to state a claim as to the franchisees. *See A.M.*, 728 F. Supp. 3d at 804.

17741054, at *10; *see also Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002) ("[T]he employer control theory and the agency theory, seem to be essentially the same in this circuit.").

"Whether two employers are a joint employer often turns on how much control one exercises over the other." *B.D.G.*, 2023 WL 5935646, at *9 (S.D. Ohio Sept. 12, 2023); *see also Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.").

Plaintiff alleges that the franchisor Defendants and their franchisee hotels are "joint employers" of the hotel staff. (¶ 181). She alleges that the Defendants "exercise significant control over the employment decisions of their hotel locations" that Defendants "promulgate policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay." (¶ 179–180). She specifically alleges Defendants have control over employee training as it relates to recognizing and responding to human trafficking. (¶ 182). She also alleges Wyndham posts all hotel jobs on their parent website and provides employee benefits. (¶141). This Court has found similar allegations sufficient to survive a motion to dismiss. *See, e.g.*, *A.R.*, 2022 WL 17741054, at *11 (finding joint employer theory of

vicarious liability sufficiently pleaded where Plaintiff pled that defendant promulgated "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay."); *A.W.*, 2022 WL 17741050, at *12 (same); *A.M.*, 728 F. Supp. 3d at 805 (allegations that defendant posted hotel jobs on its website, controlled employee training, and provided employee benefits sufficient to plead employer theory). Her claim survives here, too.

### E. Joint and Several Liability

Wyndham and Choice also argue that there is no basis for joint and several liability. (ECF No. 90 at 16; ECF No. 104 at 31, n.23). But "[g]iven that no Defendant has even been found liable in this case, it would be premature to preclude joint and several liability at this juncture." *Doe v. Best W. Int'l, Inc.*, 2024 WL 3759761, at *7 (S.D. Ohio Aug. 12, 2024).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' Motions in so far as they seek to dismiss Plaintiff's beneficiary theory claims for conduct prior to December 23, 2008. The Court **GRANTS IN PART** Choice's Motion to Dismiss to the extent it seeks to dismiss any purported perpetrator liability claim. Wyndham, Best Western, and Choice's Motions (ECF Nos. 90, 91, 104) are **DENIED** in all other respects. The G6 Defendants' Motion to Dismiss (ECF No. 135) is **GRANTED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: October 30, 2026**